DARRYL J. HOROWITT, #100898
dhorowitt@ch-law.com
SHERRIE M. FLYNN, # 240215
sflynn@ch-law.com
CRAIG A. TRISTAO, #256528
ctristao@ch-law.com
COLEMAN & HOROWITT, LLP
Attorneys at Law
499 W. Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248-4820
Facsimile:  (559) 248-4830

Attorneys for REFUGE RECOVERY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REFUGE RECOVERY, a California nonprofit public benefit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NOAH LEVINE, an individual; REFUGE RECOVERY HOUSE, LLC, a California limited liability company; REFUGE RECOVERY CLINICAL SERVICES, LLC, a California limited liability company; REBEL SAINTS MEDITATION SOCIETY dba REFUGE RECOVERY RETREATS a Washington nonprofit corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR**<br><br>1. **Breach of Fiduciary Duty;**<br><br>2. **Declaratory Relief – Copyright;**<br><br>3. **Trademark – False Designation of Origin;**<br><br>4. **Declaratory Relief – Ownership of Trademarks;**<br><br>5. **Unfair Business Practices;**<br><br>6. **Infringement of State Trademark.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff REFUGE RECOVERY, a California non-profit public benefit corporation, alleges as follows:

**PARTIES**

1. Plaintiff, REFUGE RECOVERY ("Plaintiff"), is a California nonprofit organization organized under the Nonprofit Public Benefit Corporation

1    Law for charitable purposes. Specifically, Plaintiff is organized to provide
2    support for people suffering from all forms of addiction by offering various
3    resources for recovery. Plaintiff's principal place of business is 177 Park Avenue,
4    Suite 200, San Jose, California, 95113.

5        2.    Defendant NOAH LEVINE ("Levine") is a resident of Los Angeles,
6    California.

7        3.    Defendant REFUGE RECOVERY HOUSE, LLC ("Refuge
8    Recovery House") is a California limited liability company, organized under the
9    laws of California. Levine is its sole member. Its business address is listed with
10   the Secretary of State of the State of California as, and Plaintiff is informed and
11   believes, and alleges thereon that, its principal place of business is, 2516 Lincoln
12   Blvd., Venice, California, 90291.

13       4.    Defendant REFUGE RECOVERY CLINICAL SERVICES, LLC
14   ("Refuge Recovery Services") is a California limited liability company, organized
15   under the laws of California. Levine is its sole member and its business address is
16   listed with the Secretary of State of the State of California as, and Plaintiff is
17   informed and believes, and alleges thereon that, its principal place of business is,
18   4302 Melrose Avenue, Suite 5C, Los Angeles, California, 90029.

19       5.    Plaintiff is informed and believes, and alleges thereon that Defendant
20   REBEL SAINTS MEDITATION SOCIETY doing business as REFUGE
21   RECOVERY RETREATS ("Refuge Recovery Retreats"), is a Washington
22   nonprofit corporation with its principal place of business located at 518
23   Broadway, Seattle, Washington; Plaintiff is further informed and believes, and
24   alleges thereon, that Refuge Recovery Retreats  does business within the
25   jurisdiction of this Court, including by selling tickets to residents of the State of
26   California, County of Los Angeles, to purported "Refuge Recovery Retreats".

27   / / /

28   / / /

**JURISDICTION AND VENUE**

6.     This court has subject matter jurisdiction in this matter pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1338(a) and (b) as the claim for false origination arises under the trademark laws of the United States.

7.     This court also has subject matter jurisdiction as, Plaintiff seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, as discussed in detail below, an actual, substantial, and continuing justiciable controversy exists between Plaintiff and Defendants Refuge Recovery House and Levine that requires a declaration of rights by this court.

8.     This court has personal jurisdiction over Levine, Refuge Recovery House, and Refuge Recovery Services, because their principal places of business are located within the jurisdiction of this court, and has personal jurisdiction over Refuge Recovery Retreats as it conducts business within the jurisdiction of this court and maintains contacts within this forum so as to warrant jurisdiction.

9.     This court also has supplemental jurisdiction over Plaintiff's claims for Breach of Fiduciary Duty and violation of the California Business & Professions Code under 28 U.S.C. § 1367(a).

10.     Venue is proper under 28 U.S.C. Section 1391 because Levine resides within this District, because Refuge Recovery House's principal place of business is located within this District, the principal places of businesses of Refuge Recovery House and Refuge Recovery Services are located within this District, Refuge Retreats conducts business within this district, and a substantial part of the events or omissions giving rise to the claims have occurred within this District.

/ / /

/ / /

/ / /

/ / /

# FACTS

**A.    Defendant Levine**

11.    Levine is an author and Buddhist teacher who has achieved recognition by publishing books which instruct readers on the principles of Buddhism and how they can be used to cope with social stresses and addiction.

12.    Plaintiff is informed, believes, and alleges thereon that between 2003 and 2011, Levine authored, in whole or in part, three (3) books: Dharma Punx, Against the Stream, and Heart of the Revolution.

13.    Dharma Punx was an autobiographical work, published in June 2003 and led to the creation of approximately 20 small Buddhist communities throughout the globe.

14.    Against the Stream was published in May 2007, and focused on Buddhism as a method to escape suffering.

15.    Heart of the Revolution was published in April 2011 and concerns forgiveness, compassion, and kindness.

**B.    Creation of Against the Stream Buddhist Meditation Society**

16.    In October 2007, to build upon the success of the book Against the Stream, Against the Stream Buddhist Meditation Society ("ATS") was incorporated as a California nonprofit to help create and sustain communities of healthy, accountable, wise, and compassionate people; Levine served as a director.

17.    In 2008, ATS established a meditation center in Los Angeles.

18.    Over the following ten (10) years, ATS grew to have several locations and employees, including Levine, who became an officer of ATS and provided various services.

/ / /

/ / /

/ / /

**C.**   **The Emergence of "Refuge Recovery" Group Meetings, Collaboration to Create the "Refuge Recovery" Program and Book, and the Creation of Plaintiff to Carry Out the "Refuge Recovery" Program**

19.   In 2009, as ATS grew, members held meetings to discuss the principles of Buddhism and how they can be used to overcome spiritual and personal adversity, including addiction; the meetings among members of ATS who used the teaching of Buddhism to overcome addiction began to use the term "Refuge Recovery." "Refuge Recovery" was adopted by ATS in 2010 to identify meetings which focused on overcoming addiction and was used in advertising materials for such meetings and related events.

20.   As the "Refuge Recovery" groups grew and ATS held conferences on "Buddhism and Recovery" which included discussions on research concerning the use of mindfulness meditation as part of the recovery process, ATS and Levine agreed it would be in the best interest of ATS to have ideas that emanated from the conferences reduced to written form.  Levine, an employee of ATS at the time, developed the idea for a book entitled "Refuge Recovery," also known as "Refuge Recovery: a Buddhist Path to Recovering from Addiction," with the intent, in part, to raise revenue for a new nonprofit, Plaintiff, so it could develop and grow the "Refuge Recovery" program using donations solicited by the book.

21.   While employed by ATS, Levine collaborated with others at ATS, and third parties, to write the nontheistic recovery portion of the book. Levine also obtained personal stories from third parties regarding their experiences using the principles of Buddhism to recover from addiction.

22.   Plaintiff is informed and believes and alleges thereon that ATS created a separate book account within in its internal financial record keeping system to manage funds expected to be donated for Plaintiff.

/ / /

/ / /

23.     Plaintiff is informed and believes and alleges thereon that, on or about March 16, 2011, in anticipation of the book project and to provide information on the nonprofit to be created, the domain name www.refugerecovery.org was created by Noah Levine for the benefit of Plaintiff and its use.

24.     On or about May 30, 2012, ATS filed a Fictitious Business Name Statement for the name "Refuge Recovery" with the County Clerk of Los Angeles.

25.     In June 2014, the book, "Refuge Recovery," was published; although Levine was employed by ATS while writing the book, and despite the acknowledgment that it was collaborative effort with persons at ATS and the inclusion in the book of stories written by eight other individuals, Levine was identified as the author.

26.     Although Levine was identified as the author, the book provided the following statement with solicitation for a tax-deductible contribution in furtherance of the above purpose of the book, i.e., that it would be a source of revenue for Plaintiff:

> "Refuge Recovery is a nonprofit organization. It is our vision and intention to build an extensive and comprehensive network of Refuge Recovery meetings, communities, and treatment options. We are actively seeking donations to build treatment centers with both residential and outpatient services. Our goal is to raise the capital to start treatment centers through tax-deductible donations, so that all the profit that comes from these services can go back into the community in the form of reduced rates for residential treatment for those without insurance coverage, as well as to scholarships to meditation retreats, access to outpatient services, and building of the infrastructure of the nonprofit. Please consider making a tax-deductible donation at www.refugerecovery.org."

27.     The book was immensely popular, and donations were sent to the nonprofit referenced in it, Plaintiff, which were received and handled by ATS dba Refuge Recovery until Plaintiff was incorporated.

/ / /

28.   Plaintiff was incorporated as a domestic nonprofit on February 27, 2015, and ATS dba Refuge Recovery turned over handling of the funds received for the "Refuge Recovery" program to Plaintiff. Levine served on its board of directors at this time.

29.   Since its inception, Plaintiff has grown and there are "Refuge Recovery" groups in 49 states, and at least 660 registered weekly meetings occur.

**D.   Levine Obtains the Copyright to the "Refuge Recovery" Book and Does not Share Proceeds from It with Plaintiff.**

30.   Despite acknowledging that the book was a collaborative effort with ATS, identifying third parties who contributed to the book, and including stories from third parties concerning their use of the principles of Buddhism in recovery, the publisher of the book identified Levine as the author and Levine obtained the Copyright to the book and receives royalty payments from the sale of the book.

31.   When questioned as to why he has been identified as the sole author of the "Refuge Recovery" book, Levine has not refuted that the book was a collaborative work, but rather has stated the publisher would not have published or promoted the book if it was identified as a collaborative work with other anonymous authors.

32.   Although the "Refuge Recovery" book serves as a textbook that would assist persons seeking to apply the principles of Buddhism for addiction recovery, Plaintiff is unable to promote the book to its members for this purpose, or any other purpose, as it could be seen as providing a benefit to Levine and thereby jeopardizing Plaintiff's nonprofit status.

33.   Plaintiff's Asset Sharing Committee has discussed with Levine how his holding the copyright to the "Refuge Recovery" book impacts Plaintiff's ability to promote the book. Levine recognized the issue and agreed to grant copyrights rights, specifically derivative rights, to the "Refuge Recovery" book to Plaintiff so that Plaintiff could promote its use without fear of harm to its

1  nonprofit status, and promised to include a member of Plaintiff's board of

2  directors in discussions with the publisher to remove himself as the author.

3      34.    Levine, however, did not include a member of Plaintiff's board in a

4  later discussion he had with the publisher of the book concerning his removal as

5  the author, and then refused to grant any rights to the "Refuge Recovery" book to

6  Plaintiff, but intimated he would change his mind if Plaintiff made changes to its

7  executive leadership. Then, on October 19, 2018, Levine stated he would not

8  grant any rights in the "Refuge Recovery" book to Plaintiff.

9      35.    By retaining the copyright to the "Refuge Recovery" book for his

10  personal benefit instead of for Plaintiff, any promotion by Plaintiff of the book

11  can still be considered as inuring to the benefit of Levine, thereby jeopardizing

12  Plaintiff's nonprofit status.

13  **E.    Levine's Creation of Defendants REFUGE RECOVERY HOUSE,**

14      **LLC and REFUGE RECOVERY CLINICAL   SERVICES, LLC, to**

15      **the Detriment of Plaintiff, and Cross-Promotion of the Defendant**

16      **Entities with Plaintiff**

17      36.    Although the book "Refuge Recovery" was written by Levine while

18  he was an employee of ATS, was a collaborative effort with ATS, its members,

19  and others, the purpose of which was to generate funds for Plaintiff, and despite

20  knowing that ATS was doing business as Refuge Recovery with the intent to hand

21  funds and operations of the "Refuge Recovery" program to Plaintiff so it could

22  develop treatment centers, Levine established the for-profit limited liability

23  company, Defendant Refuge Recovery House, on February 13, 2014 to conduct

24  the same business as Plaintiff, and thereafter caused an insert to be placed in the

25  book to promote Refuge Recovery House.

26      37.    Despite serving on Plaintiff's board since its incorporation in

27  February 2015, Levine continued to promote Defendant Refuge Recovery House,

28  for the same or substantially similar purposes as Plaintiff, thereby causing

1  consumer confusion as to whether or not Plaintiff and Defendant Refuge
2  Recovery House were the same or related entities.

3          38.    Moreover, in March 2015, Levine caused the creation of another
4  limited liability company, Defendant Refuge Recovery Services, which Plaintiff
5  is informed and believes, and alleges thereon, was intended to also utilize the
6  "Refuge Recovery" addiction treatment program, and which wrongly uses
7  "Refuge Recovery" in its name.

8          39.    The Defendant Refuge Recovery House maintains a website which
9  utilizes the "Refuge Recovery" name, but does not attempt to distinguish itself
10 from Plaintiff, despite informal demands that it so distinguish itself.

11         40.    In addition to a website, the Defendants also provide material to the
12 public via social media, such as YouTube, and do not distinguish themselves
13 from the Plaintiffs on social media.

14         41.    The creation by Levine of the for-profit Defendants, the conduct of
15 the Defendants online without stating they are not affiliated with Plaintiff and the
16 confusion this conduct creates in the public as between Plaintiff and Defendants
17 harms Plaintiff's reputation and threatens its tax status as a nonprofit.

18 **F.     Defendant REFUGE RECOVERY HOUSE, LLC Obtains**
19 **        Trademarks for  Plaintiff's Name and Logo.**

20         42.    While on the board for Plaintiff, Levine also caused Defendant
21 Refuge Recovery House to register two (2) trademarks for REFUGE
22 RECOVERY. Specifically, Defendant, Refuge Recovery House, on or about
23 November 22, 2016, obtained trademark registration number 5085888 for
24 REFUGE RECOVERY in Class 25 for caps and shirts, and in Class 44 for a
25 number of therapeutic services, including addiction treatment and detoxification
26 services. On or about July 4, 2017, Defendant also obtained trademark
27 registration number 5224303 for REFUGE RECOVERY in Class 16 for printed
28 matter including worksheets, decals and bumper stickers, among other items, and

1  in Class 41 for educational services including providing training in addiction
2  treatment and detoxification, among other related services.

3      43.   To obtain the trademarks Defendants made false representations as
4  to the origin and ownership of the trademark REFUGE RECOVERY. The
5  November 22, 2016 trademark registration provided a "first use" date of January
6  1, 2013, while the July 4, 2017 trademark registration provided a different "first
7  use" date of March 2014. Both dates, however, follow the use of REFUGE
8  RECOVERY by Plaintiff's predecessor in interest, ATS, in materials beginning
9  in 2010 and its Fictitious Business Name Statement filed on May 30, 2012.

10     44.   In addition to causing Defendant Refuge Recovery House to obtain
11  trademarks with Plaintiff's name while he was a board member, Levine also
12  caused Defendant Refuge Recovery House to obtain trademarks for at least one
13  logo associated with Plaintiff. Namely, Defendant Refuge Recovery House holds
14  trademarks 5224303 and 5237934 for Plaintiff's three jewels logo, which has
15  three jewels within a circle that connect at the center as follows:



20     45.   Defendant Refuge Recovery House filed for trademarks 86960529
21  and 86960533 on March 31, 2016, claimed a first use date in both file
22  applications of April 2014, and received registrations as follows: November 22,
23  2016 for trademark 5224303 (serial number 86960529) and June 13, 2017 for
24  trademark 5237934 (serial number 86960533), as with the trademarks for
25  REFUGE RECOVERY, the first use dates post-date Plaintiff's predecessor in
26  interest's use of the logo.
27  / / /
28  / / /

**G.    Levine Diverts $130,000.00 from Plaintiff to Defendant REFUGE RECOVERY HOUSE, LLC**

46.    Plaintiff is informed and believes, and alleges thereon, that prior to a change of record keeper in 2017, it received $130,000.00 in donations which were intended to be used by Plaintiff for scholarships to pay the costs of rehabilitation and treatment for individuals who could not otherwise afford treatment.

47.    Plaintiff is informed, believes, and alleges thereon that, instead of using the $130,000.00 in funds to provide scholarships to pay for the costs of rehabilitation and treatment for individuals who could not otherwise afford treatment, Levine caused the $130,000.00 in funds to be distributed to Defendant Refuge Recovery House to pay its costs, including employee salaries.

**H.    Defendants Levine and Refuge Recovery Retreats' Wrongful Conduct   with  Respect to the Use of "Refuge Recovery" to Promote Retreats.**

48.    On or about July 19, 2018, Plaintiffs' former board member, Joseph Sourhada, sent an email to other members of Plaintiff's board of directors announcing the formation of a new entity by Levine, who would receive assistance from Mr. Sourhada and a Ms. Rachel Savage, to be called "Refuge Recovery Retreats," which would provide "official" "Refuge Recovery" retreats to Plaintiff's members. Members of Plaintiff's board later learned that, when the email was sent, a refugerecoveryretreats.org website had already been created and Refuge Recovery Retreats was selling reservations for an upcoming event.

49.    Members of Plaintiff's board of directors resolved to demand that Levine cease the creation of Refuge Recovery Retreats. A board member contacted Levine to demand that he cease the creation of Refuge Recovery Retreats, and stated that "Refuge Recovery," should not have been nor should be used in the name of other entities, and stated that if the conduct with respect to the creation of retreats did not cease Plaintiff would initiate litigation and seek an

1   injunction.

2       50.   In discussions with members of Plaintiff's board, Levine agreed to

3   cease the use of "Refuge Recovery" in retreats and thereafter Refuge Recovery

4   Retreats began to host meditation retreats lead by Levine without including the

5   name "Refuge Recovery" in the retreats, but instead using their incorporated

6   name Rebel Saints Meditation Society.

7       51.   On or about October 18, 2018, Refuge Recovery Retreats was,

8   however, again actively engaged in marketing retreats, including retreats which

9   contain "Refuge Recovery" in the name of the retreats, including for a retreat held

10  on January 10, 2019, and continues to market future "Refuge Recovery" retreats;

11  Refuge Recovery Retreats also includes the REFUGE RECOVERY and logo

12  trademarks on its webpage, but does not represent to members of the public the

13  retreats are not affiliated with Plaintiff.

14      52.   This has caused significant confusion in the public as to whether the

15  retreats put on by Refuge Recovery Retreats are officially connected with

16  Plaintiff, and confusion as to Levine's affiliation with Plaintiff causes it harm to

17  Plaintiff's reputation.

18  **I.    The Damaged Reputation and Diminished Status of Levine and the**

19         **Unfortunate Closure of ATS.**

20      53.   In early 2018, multiple allegations of sexual misconduct by Levine

21  were reported to the Los Angeles Police Department.

22      54.   Although charges were not filed against Levine, the allegations

23  caused a divide amongst several communities, including ATS, which in March

24  2018 announced it was suspending Levine as a teacher.

25      55.   As the controversy continued it impacted ATS, which was closely

26  associated with the persona of Levine, including its ability to fundraise, and ATS

27  ceased its operations in September, 2018.

28  / / /

**J.     The Assignment of ATS' Rights to "Refuge Recovery" to Plaintiff and the Assignment to Plaintiff of Rights by Persons Who Wrote Personal Stories contained in the "Refuge Recovery" Book to Plaintiff .**

56.     After ATS ceased operating its centers it assigned any and all rights it had to "Refuge Recovery" to Plaintiff. A true and correct copy of the Assignment is attached hereto as **Exhibit 1**.

57.     Moreover, Plaintiff is informed and believes and alleges thereon that certain of the eight individuals who provided the personal stories contained in the book "Refuge Recovery" have not assigned any rights to Levine to use their stories. Two out of the eight individuals have assigned their rights to the stories contained in the book to Plaintiff.

**K.     Defendants Infringement on Plaintiff's Rights, Likelihood of Confusion, and Injury to Plaintiff.**

58.     Plaintiff continues to operate, however, it too has been impacted by the allegations against Levine, which Levine did not immediately disclose to Plaintiff. Levine has voluntarily left its board.

59.     Despite past representations by Levine that he and Refuge Recovery House would provide rights in intellectual property regarding the "Refuge Recovery" book and REFUGE RECOVERY trademarks to Plaintiff, Levine still holds the copyright to the book "Refuge Recovery" and Refuge Recovery House still holds trademarks.

60.     As discussed above, Plaintiff is informed and believes and alleges thereon that the Defendants continue to use the "Refuge Recovery" name to promote events they are organizing; specifically Levine and Refuge Recovery Retreats have organized and are organizing retreats in Raleigh, North Carolina, Arizona, and Washington as official "Refuge Recovery" retreats, and that Levine's and Refuge Recovery Retreats use of "Refuge Recovery" to promote causes consumer confusion as to whether or not Plaintiff is organizing or

1    affiliated with the events.

2         61.    As a result of Defendants' use of "Refuge Recovery" for events not

3    affiliated with Plaintiff, persons are inquiring as to whether Plaintiff is conducting

4    the events, and are rebuking Plaintiff as being affiliated with the Defendants,

5    thereby causing harm to Plaintiff, the goodwill associated with its name, and its

6    reputation.

7                           **FIRST CLAIM FOR RELIEF**

8                    **(Breach of Fiduciary Duty Against NOAH LEVINE)**

9         62.    Plaintiff incorporates the allegations contained in paragraphs 1

10   through 61 as though fully set forth herein.

11        63.    Levine, as a member of the board of Plaintiff, owed Plaintiff

12   fiduciary duties, including the duty of loyalty, the duty of care, the duty of the

13   utmost good faith, fairness and honesty, the duty to refrain from abusing his

14   position of control, the duty to not waste corporate resources, and the duty to not

15   favor his own interests at the expense of Plaintiff.

16        64.    Levine breached his fiduciary duties to Plaintiff by, among other

17   things: (1) converting $130,000.00 from Plaintiff for an undisclosed and improper

18   use by his for-profit limited liability company, (2) depreciating Plaintiff's assets,

19   specifically decreasing the value of Plaintiff's use and enjoyment of its name and

20   logo by causing Refuge Recovery House to obtain trademarks for the same and

21   failing to include Plaintiff in the acquisition of the intellectual property, (3)

22   refusing to grant Plaintiff rights to the book "Refuge Recovery," (4) attempting to

23   use trademarks held by his for profit company to exert control of Plaintiff, (5)

24   failing to disclose to Plaintiff that he was the subject of criminal allegations made

25   to the Los Angeles Police Department for over two months despite knowing the

26   harm that could result to Plaintiff, and (6) usurping the business opportunities of

27   Plaintiff, including by creating the entity Defendants to engage in the same scope

28   of work as Plaintiff and conduct "Refuge Recovery" retreats.

65.   The wrongful conduct particularized herein was not due to an honest error in judgment, but rather to Levine's intentional misconduct, gross mismanagement, bad faith and/or reckless disregard for the rights and interests of Plaintiff, and for acting without reasonable and ordinary care which he owed Plaintiff.

66.   As a direct and proximate result of Levine's willful and malicious actions, Plaintiff has been damaged in an amount according to proof.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief Against NOAH LEVINE)

67.   Plaintiff incorporates the allegations contained in paragraphs 1 through 61 as though fully set forth herein.

68.   An actual controversy has arisen and now exists between Plaintiff and Levine concerning their respective rights and duties with respect to the book Refuge Recovery, Plaintiff contends Levin collaborated with ATS doing business as Refuge Recovery, and that as the nonprofit "Refuge Recovery" identified in the book and as the assignee of rights to the book from ATS, Plaintiff is a coauthor of the book and a co-owner of rights to the book Levine purports to hold solely as his own, or, in the alternative Levine wrote the book "Refuge Recovery" as an employee of ATS and therefore it was written as a works made for hire.

69.   Plaintiff desires a judicial determination of its rights to the authorship and copyrights to the book "Refuge Recovery" and a declaration as to whether ATS is co-author of the book and as ATS' assignee Plaintiff is a co-author of the book, or, in the alternative, whether Levine performed work on the book as a works made for hire for ATS doing business as Refuge Recovery, and that as the assignee of (1) ATS' rights to the book and (2) the assignee of individuals who provided their personal stories for the book, Plaintiff holds all rights to the book purportedly held by Levine.

/ / /

70.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain its rights and duties with respect to the book "Refuge Recovery."

## THIRD CLAIM FOR RELIEF

### (Trademark – False Designation of Origin

### Against REFUGE RECOVERY HOUSE, LLC)

71.     Plaintiff incorporates the allegations contained in paragraphs 1 through 61 as though fully set forth herein.

72.     Defendant Refuge Recovery House, by falsely designating the origin of Plaintiff's intellectual property as its own and thereafter using it in commerce in connection with the sale, distribution, or advertising of goods based on the "Refuge Recovery" program and which use "Refuge Recovery" as a title, without the consent of Plaintiff, has caused, is likely to cause, and will continue to cause confusion or mistake, and to deceive customers interested in the nonprofits "Refuge Recovery" approach to treatment of addiction, all in violation of 15 U.S.C. § 1125(a).

73.     As a direct and proximate cause of Defendant Refuge Recovery House's actions in violation of 28 U.S.C. § 1125(a), Plaintiff has suffered damages in an amount according to proof at the time of trial.

74.     The action of Refuge Recovery House in regards to the misrepresentation and fraud as to the origin and use of "Refuge Recovery", and its continuing use of "Refuge Recovery" in a way it knows will cause harm to Plaintiff is malicious, willful and intentional conduct engaged in with conscious disregard of the rights of Plaintiff, justifying an award of exemplary and punitive damages in an amount to be proven at trial.

75.     The actions on the part of Refuge Recovery House have caused and will continue to cause Plaintiff irreparable injury and harm if not enjoined.

/ / /

**FOURTH CLAIM FOR RELIEF**

**(Declaratory Relief that Plaintiff is the Owner of Trademarks)**

**(Against REFUGE RECOVERY HOUSE, LLC)**

76.    Plaintiff incorporates the allegations contained in paragraphs 1 through 61 as though fully set forth herein.

77.    An actual controversy has arisen and now exists between Plaintiff and Refuge Recovery House concerning their respective rights and duties with respect to ownership of the trademarks for "Refuge Recovery" and the logo, Plaintiff contends that is the rightful owner of the trademarks, that Defendant Refuge Recovery House holds the trademarks in constructive trust for Plaintiff, and Defendant Refuge Recovery House must assign its rights to the trademarks to Plaintiff.

78.    Plaintiff desires a judicial determination of its rights to the trademarks and a declaration as to whether it holds all rights to the trademarks.

79.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain its rights and duties with respect to the trademarks.

**FIFTH CLAIM FOR RELIEF**

**(Unfair Business Practices – Cal. Bus. & Profs. Code section 17200)**

**(Against REFUGE RECOVERY HOUSE, LLC, REFUGE RECOVERY CLINICAL SERVICES, LLC, and REBEL SAINTS MEDITATION DBA REFUGE RECOVERY RETREATS)**

80.    Plaintiff incorporates the allegations contained in paragraphs 1 through 61 as though fully set forth herein.

81.    Defendants Refuge Recovery House, Refuge Recovery Services, and Refuge Recovery Retreats conduct business in the State of California and Plaintiff is informed and believes that Defendant Refuge Recovery Services, although it has ceased business operations, continues to exist and hold funds from when it

1  operated.

2       82.   California Business & Professions Code § 17200 prohibits any

3  unlawful, unfair or fraudulent business act or practice.

4       83.   The actions of Refuge Recovery House, Refuge Recovery Services,

5  and Refuge Recovery Retreats in intentionally and falsely holding themselves out

6  as affiliated with Plaintiff, a nonprofit, confused and confuses individuals into

7  thinking they are financially supporting and otherwise endorsing Plaintiff, a

8  nonprofit, when in fact they are not, this conduct for money and publicity

9  constitutes an unfair and/or fraudulent business practice under California

10  Business & Professions Code § 17200.

11       84.   The actions of Refuge Recovery House, Refuge Recovery Services,

12  and Refuge Recovery Retreats in engaging in the acts described hereinabove,

13  constitute an unfair and/or fraudulent business practice under California Business

14  & Professions Code § 17200.

15       85.   The actions of Refuge Recovery House, Refuge Recovery Services,

16  and Refuge Recovery Retreats, as alleged herein, create a likelihood to deceive

17  and confuse members of the general public who are interested in supporting

18  Plaintiff, a nonprofit, and causes irreparable and substantial harm to Plaintiff and

19  its reputation.

20       86.   As a direct and proximate cause of Refuge Recovery House, Refuge

21  Recovery Services, and Refuge Recovery Retreats' violation of California

22  Business & Professions Code § 17200, Plaintiff has lost money and suffered

23  injury in fact and damages in the form of lost revenue, fees, and other costs,

24  which Refuge Recovery House and Refuge Recovery Services are required to

25  disgorge, in an amount according to proof.

26       87.   The actions of Refuge Recovery House and Refuge Recovery

27  Services described herein, in violation of California Business & Professions Code

28  § 17200, were malicious, willful and intentional, and done in conscious disregard

of the rights of Plaintiff, justifying an award of exemplary and punitive damages in an amount to be proven at trial

## SIXTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement)

### (Against REFUGE RECOVERY HOUSE, LLC, REFUGE RECOVERY CLINICAL SERVICES, LLC, and REBEL SAINTS MEDITATION DBA REFUGE RECOVERY RETREATS)

88.    Plaintiff incorporates the allegations contained in paragraphs 1 through 61 as though fully set forth herein.

89.    Plaintiff's predecessor in interest, ATS dba Refuge Recovery, used the REFUGE RECOVERY mark and logo earlier than Defendants Refuge Recovery House,  Refuge Recovery Services, and Refuge Recovery Retreats, and has continuously, used the same.

90.    Defendants Refuge Recovery House, Refuge Recovery Services, and Refuge Recovery Retreats, have, as set forth above, wrongly used Plaintiff's trademarks subsequent to Plaintiff's predecessor in interest's use of the trademarks.

91.    As discussed above, there is a likelihood of confusion in the minds of the public that Defendants Refuge Recovery House, Refuge Recovery Services, and Refuge Recovery Retreats businesses are the same as, or affiliated with, Plaintiff's business.

92.    The actions of Defendants Refuge Recovery House, Refuge Recovery Services, and Refuge Recovery Retreats, described herein, were malicious, willful and intentional, and done in conscious disregard of the rights of Plaintiff, justifying an award of exemplary and punitive damages in an amount to be proven at trial.

/ / /

/ / /

## **SEVENTH CLAIM FOR RELIEF**

### **(Common Law Conversion)**

### **(Against NOAH LEVINE, REFUGE RECOVERY HOUSE, LLC and REFUGE RECOVERY CLINICAL SERVICES, LLC)**

93.    Plaintiff incorporates the allegations contained in paragraphs 1 through 61 as though fully set forth herein.

94.    Plaintiff is, and all times relevant herein was, the owner or otherwise was entitled to possession of donations in an amount not less than $130,000.00.

95.    Plaintiff is informed and believes, and alleges thereon, Levine intentionally exerted control over the above referenced donations in contradiction of Plaintiff's rights to the donations and thereby converted the same by diverting the donations to Refuge Recovery House for Refuge Recovery House to use for its own benefit and/or for the benefit of Levine as the sole member of Refuge Recovery House and Refuge Recovery Services.

96.    Plaintiff is informed and believes, and alleges thereon, Refuge Recovery House and/or Refuge Recovery Services accepted the donations converted from Plaintiff by Levine, with knowledge that the donations were to be used for the benefit of Plaintiff, and while the donations were in its possession improperly used the funds for its own benefit and/or the benefit of its sole member, and thereby further converted the donations.

97.    As a result of Levine's, Refuge Recovery House's, and Refuge Recovery Services' acts of conversion, Plaintiff has been damaged in an amount to be proven at trial, including all compensatory damages.

98.    The actions of Levine, Refuge Recovery House and Refuge Recovery Services, described herein, were malicious, willful and intentional, and done in conscious disregard of the rights of Plaintiff, justifying an award of exemplary and punitive damages in an amount to be proven at trial.

/ / /

# PRAYER

WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as follows:

**As to the First Claim for Relief:**

1.     For actual and compensatory damages in an amount according to proof at the time of trial;

**As to the Second Claim for Relief:**

1.     A declaration that Plaintiff is a coauthor of the book "Refuge Recovery" or, in the alternative, that Levine performed work on the book "Refuge Recovery" as a works made for hire for ATS and that Plaintiff, as the assignee of ATS holds all rights currently held by Levine to the intellectual property affiliated with "Refuge Recovery," including the copyright for the book "Refuge Recovery;"

2.     For the issuance of a preliminary and permanent injunction that enjoins Levine from:

       a.     Using or profiting from Plaintiff's intellectual property, including the book "Refuge Recovery;"

       b.     Advertising, selling, listing, promoting, displaying, offering for sale or shipping, or taking any steps to advertise, sell, list, promote, display, offer for sale or ship, any product or service that uses Plaintiff's intellectual property, including the book "Refuge Recovery";

       d.     Inducing, assisting or abetting any other person or entity in engaging in or performing any of the activities proscribed in the paragraphs above; and,

       e.     Engaging in any further infringement on Plaintiff's intellectual property, including its rights to the book "Refuge Recovery".

**As to the Third Claim for Relief**:

1.     For actual and compensatory damages in an amount according to

proof at the time of trial;

2.    For interest on general damages at the rate of 10% per annum in an amount according to proof at the time of trial;

3.    For exemplary and punitive damages in an amount to be proven at trial;

4.    For an order to recall, impound and destroy all goods, advertising or other items infringing the Plaintiff's marks pursuant to 15 U.S.C. § 1118, or otherwise; and,

5.    For the issuance of a preliminary and permanent injunction that enjoins Defendant Refuge Recovery House, including all partners, offices, agents, servants, employees, attorneys, subsidiaries and successors-in-interest from:

a.    Using Plaintiff's "Refuge Recovery" marks or any mark that is confusingly similar to Plaintiff's, whether alone or in combination with any other words or symbols;

b.    Advertising, selling, listing, promoting, displaying, offering for sale or shipping, or taking any steps to advertise, sell, list, promote, display, offer for sale or ship, any product or service with the "Refuge Recovery" mark;

c.    Inducing, assisting or abetting any other person or entity in engaging in or performing any of the activities proscribed in the paragraphs above; and,

d.    Engaging in any further infringement.

**As to the Fourth Claim for Relief:**

1.    A declaration that Plaintiff is the owner of the trademarks and logo, and that Refuge Recovery House holds all rights to the trademarks for "Refuge Recovery" in trust for Plaintiff;

2.    For the issuance of a preliminary and permanent injunction that enjoins Defendant Refuge Recovery House including all partners, offices, agents, servants, employees, attorneys, subsidiaries and successors-in-interest from:

a.      Using Plaintiff's REFUGE RECOVERY marks or any mark that is confusingly similar to Plaintiff's, whether alone or in combination with any other words or symbols;

b.      Advertising, selling, listing, promoting, displaying, offering for sale or shipping, or taking any steps to advertise, sell, list, promote, display, offer for sale or ship, any product or service with the REFUGE RECOVERY mark;

c.      Inducing, assisting or abetting any other person or entity in engaging in or performing any of the activities proscribed in the paragraphs above; and,

d.      Engaging in any further infringement.

**As to the Fifth Claim for Relief:**

1.      For an order that defendants, Refuge Recovery House, Refuge Recovery Services and Rebel Saints Meditation Society dba Refuge Recovery Retreats, disgorge all revenue and profits earned from the sale of any products or services that bore Plaintiff's marks;

2.      For the issuance of a preliminary and permanent injunction that enjoins Defendants Refuge Recovery House, Refuge Recovery Services, and Refuge Recovery Retreats, including all partners, offices, agents, servants, employees, attorneys, subsidiaries and successors-in-interest from:

a.      Using Plaintiff's REFUGE RECOVERY marks or any mark that is confusingly similar to Plaintiff's, whether alone or in combination with any other words or symbols;

b.      Advertising, selling, listing, promoting, displaying, offering for sale or shipping, or taking any steps to advertise, sell, list, promote, display, offer for sale or ship, any product or service with the REFUGE RECOVERY mark;

/ / /

c.      Inducing, assisting or abetting any other person or entity in engaging in or performing any of the activities proscribed in the paragraphs above; and,

d.      Engaging in any further infringement.

**As to the Sixth Claim for Relief:**

1.      For actual and compensatory damages in an amount according to proof at the time of trial;

2.      For interest on general damages at the rate of 10% per annum in an amount according to proof at the time of trial;

3.      For an order to recall, impound and destroy all goods, advertising or other items infringing the Plaintiff's marks pursuant to 15 U.S.C. § 1118, or otherwise; and,

4.      For the issuance of a preliminary and permanent injunction that enjoins Defendants Refuge Recovery House, Refuge Recovery Services, and Refuge Recovery Retreats, including all partners, offices, agents, servants, employees, attorneys, subsidiaries and successors-in-interest from:

a.      Using Plaintiff's REFUGE RECOVERY marks or any mark that is confusingly similar to Plaintiff's, whether alone or in combination with any other words or symbols;

b.      Advertising, selling, listing, promoting, displaying, offering for sale or shipping, or taking any steps to advertise, sell, list, promote, display, offer for sale or ship, any product or service with the REFUGE RECOVERY mark;

c.      Inducing, assisting or abetting any other person or entity in engaging in or performing any of the activities proscribed in the paragraphs above; and,

d.      Engaging in any further infringement.

/ / /

---

5.     For exemplary and punitive damages in an amount to be proven at trial;

**As to the Seventh Claim for Relief:**

1.     For actual and compensatory damages in an amount according to proof at the time of trial;

2.     For interest on general damages at the rate of 10% per annum in an amount according to proof at the time of trial;

3.     For exemplary and punitive damages in an amount to be proven at trial;

**As to All Causes of Action**

1.     For costs of suit incurred herein; and,

2.     For such other and further relief as the Court may deem just and proper.

Dated: January 28, 2019                COLEMAN & HOROWITT, LLP

By: _____
        DARRYL J. HOROWITT
        SHERRIE M. FLYNN
        CRAIG A. TRISTAO
        Attorneys for Plaintiff REFUGE
        RECOVERY

**DEMAND FOR JURY TRIAL**

Plaintiff, REFUGE RECOVERY, hereby demands a trial by jury.

Dated: January 28, 2019                COLEMAN & HOROWITT, LLP

By: _____
        DARRYL J. HOROWITT
        SHERRIE M. FLYNN
        CRAIG A. TRISTAO
        Attorneys for Plaintiff REFUGE
        RECOVERY